**FRANKLIN COUNTY EMPLOYMENT AND TRAINING ADMINISTRATION, Petitioner,**

v.

**James DONOVAN, Secretary of Labor, United States Department of Labor, Respondent.**

**No. 300, Docket 82–4057.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1982.

Decided April 28, 1983.

Richard H. Edwards, Franklin County Atty., Malone, N.Y. (James P. Bessette, Malone, N.Y., of counsel), for petitioner.

Harry Sheinfeld, Counsel for Lit., U.S. Dept. of Labor, Washington, D.C. (Frank P. Buckley, Atty., U.S. Dept. of Labor, T. Timothy Ryan, Jr., Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employment and Training, U.S. Dept. of Labor, Washington, D.C., of counsel), for respondent.

Joan E. Donoghue, Washington, D.C. (Robert N. Sayler, John E. Heintz, Karen H. Rothenberg, Covington & Burling, Washington, D.C., of counsel), for amici curiae National Ass'n of Counties; National League of Cities; U.S. Conference of Mayors; American Public Welfare Ass'n; Nat. Council of Local Public Welfare Administrators; City of Stockton, Cal.; County of Los Angeles, Cal.; County of Onslow, N.C.; City of Portland, Or.; City and County of San Francisco, Cal.; City of Boston, Mass.; Broward Employment and Training Admin.; State of Me.; State of N.C.; City of Seattle, Wash.; Com. of Mass. Dept. of Manpower Development; City of San Jose, Cal.; and County of Cumberland, N.C.

Before OAKES and WINTER, Circuit Judges, and MacMAHON, District Judge.*

* The Honorable Lloyd F. MacMahon, United States District Judge for the Southern District of New York, sitting by designation.

WINTER, Circuit Judge:

Franklin County Employment and Training Administration ("Franklin County") petitions for a review of a decision by the Secretary of Labor that excessive workers' compensation premiums were paid to the county's Self Insurance Plan ("SIP") from funds provided under the Comprehensive Employment and Training Act of 1973 ("CETA"), 29 U.S.C. §§ 801–992 (1976). The Secretary ordered Franklin County to refund from non-CETA funds $38,132.55.

Franklin County contends that (i) the Secretary exceeded his authority and acted in breach of contractual principles by seeking recoupment of wrongly spent CETA monies from non-CETA funds; (ii) the decision was not supported by substantial evidence in the record before the Administrative Law Judge ("ALJ") and (iii) the decision wrongly placed the burden of proof upon Franklin County rather than upon the Secretary. Franklin County is supported by *amici curiae* including the National Association of Counties, the National League of Cities, the United States Conference of Mayors, as well as several state, county, and city governments and associations of public welfare administrators. They argue that the Secretary exceeded his authority under the 1973 Act in attempting to seek recoupment from non-CETA funds, that the 1978 Act cannot be retroactively applied and that neither the Secretary's own regulations nor the common law of contracts permit a repayment sanction from non-CETA funds. Because Franklin County never raised in any form the issues regarding the Secretary's authority to impose recoupment sanctions during the course of administrative proceedings, those questions are not properly before us and we decline to consider them. Franklin County's other claims are either waived or meritless.

## BACKGROUND

CETA was designed to provide job training and employment opportunities for eco-

nomically disadvantaged, unemployed, and underemployed persons within decentralized federal, state, and local job programs. 29 U.S.C. § 801. During the years in question, Franklin County was a subgrantee of a CETA prime sponsor, the New York State Department of Labor ("NYSDOL").

In accord with the New York State Workman's Compensation Law, N.Y.Work. Comp.Law § 50(4) (McKinney 1976), Franklin County had previously elected to establish a Self Insurance Plan to insure itself against workers' compensation liability. The County charged its 1976 and 1977 CETA subgrants $35,000 each toward an estimated annual SIP contribution of $134,-665 and $135,534 in 1976 and 1977 respectively. In each year $5,000 was set aside for the SIP reserve fund, $90,000 for awards and benefits, and roughly $40,000 for administrative expenses. During the two years, the SIP reserve fund rose from $4,868.94 to $58,376.12, apparently reflecting an overfunding of the plan.

The $35,000 charged to the CETA program represented approximately 1% of the CETA staff payroll and 3% of the participant payroll,[1] while the amount paid into the SIP for coverage of non-CETA workers constituted 1.556% of their payroll. The County relied upon several factors in arriving at this disparate premium rate, including its experience under previous employment and training programs, the age and job descriptions of most CETA workers, and the possible demise of the CETA program which might leave the SIP without ongoing contributions toward long-term liabilities arising from injuries to CETA participants. However, the county reached the 3% figure without resort to actuarial tables, basing it only on a general sense of the risk involved.

Since the SIP covers CETA and non-CETA workers, an overfunding from CETA funds would ultimately allow the County to reduce the payments made on behalf of non-CETA workers or perhaps even to reduce the size of the SIP reserve funds by transferring funds to Franklin County's general revenues. After an audit in 1978, NYSDOL disallowed a portion of the amounts expended from the 1976 and 1977 grants for workers' compensation coverage. NYSDOL noted that accident experience, exposure to risk, and similar factors were not taken into account in fixing SIP premiums for non-CETA employees while they predominated, albeit imprecisely, in the CETA participant assessments. The NYSDOL audit also revealed that although the CETA payroll constituted 14.1% of the total payroll covered by the SIP, it accounted for roughly 25% of the total yearly contributions to the SIP while CETA participants were responsible for only about 12.5% of the total awards and benefits paid out by the plan. Hence, NYSDOL informed the county that experience dictated, if anything, that CETA employees be assessed at a lower premium rate than other employees and that it was certainly inequitable to assess them higher premiums. NYSDOL then recalculated the premiums using the 1.556% flat rate applied by the county to non-CETA workers and disallowed the excess charges, some $38,132.55. Franklin County appealed the decision of NYSDOL in a letter dated January 18, 1979.

On February 1, 1982, the ALJ issued his decision and order, essentially ratifying the decision and findings of NYSDOL. He noted, however, that the higher premium rates were not only inequitable but were contrary to 41 C.F.R. §§ 1–15.711–10, 1–15.711–13 (1982) of the Federal Procurement Regulations,[2] which mandate consistent compensa-

---

1. The actual premium rates for CETA participants varied according to payroll segment and ranged from a low of 0.46% on a small payroll segment of $6,921.27 to as high as 8.35%. The largest segment of the payroll was assessed at 2.92% or 3% and the county itself apparently planned on an average CETA participant contribution of 3.173% of payroll for the years in question.

2. 41 C.F.R. § 1–15.711–13 provides in pertinent part regarding "Employee fringe benefits":

Costs identified under paragraphs (a) and (b) of this section are allowable to the extent that total compensation for employees is reasonable as defined in par. 1–15.711–10. . . .
(b) Employee benefits in the form of employer contributions or expenses for . . . work-

tion for CETA and non-CETA workers performing similar work. According to the ALJ, Franklin County offered no evidence that the degree of risk from long-term or re-opened awards justified either higher premiums or the creation of a special reserve fund and did not furnish any data to justify the 3% figure itself. He ordered the county to refund the misspent monies to the Department of Labor from non-CETA funds. The county did not seek review of the ALJ's decision within 30 days and it therefore became the final decision of the Secretary of Labor pursuant to 20 C.F.R. § 676.91(f). It is from this decision that Franklin County petitions for review.

## THE SECRETARY'S AUTHORITY TO ORDER RECOUPMENT

The question of the Secretary's authority to order recoupment of misspent monies from non-CETA funds reaches us in a most undesirable procedural posture. Franklin County, the party in interest, has submitted a perfunctory brief containing a scant 3½ pages of legal argument, only one of which deals with the issue of the Secretary's authority and which nowhere addresses the issue of waiver before the ALJ, an argument strenuously urged upon us by the Secretary. Moreover, Franklin County's counsel declined the opportunity to appear before us for oral argument.

■ *Amici,* in contrast, have submitted a brief containing 30 pages of able and complex legal argument regarding the general issue of the Secretary's authority or lack thereof to order recoupment under either the 1973 or the 1978 Acts. Nevertheless, we decline to consider that issue in the instant case.

It is clear from the record, as *amici* concede, that Franklin County never argued, raised or even alluded to the issue of the Secretary's authority to recoup CETA funds from non-CETA sources at any point in the administrative proceedings. Franklin County's brief before us raises the issue, to be sure, but the cursory argument offered in support is altogether inadequate. Moreover, its failure to address the waiver issue borders on a concession.

■ *Amici* nevertheless urge this court not to "abdicate its responsibility" and to decide this issue, citing Section 9(b) of the Administrative Procedure Act, 5 U.S.C. § 558(b) (1976) which provides that a penalty may not be imposed "except within jurisdiction delegated to the agency and as authorized by law." However, any suggestion that a challenge to the Secretary's authority to order recoupment is jurisdictional in nature is without merit. However disputable the Secretary's authority may be, it hardly amounts to an *ultra vires* act or "patent violation of agency authority." *See Independent Cosmetic Manufacturers and Distributors, Inc. v. United States Department of Health, Education and Welfare,* 574 F.2d 553, 555 (D.C.Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978). Unpacked, the issue is merely a question of what remedies are available to the Secretary to redress an illegal use of CETA funds. *Amici* agree the Secretary has oversight responsibility and numerous remedial powers. They merely argue, based in part on statutory materials and in part on a claim that the Secretary is not following his own regulations, that the recoupment remedy is not among them. These garden variety arguments hardly entail a jurisdictional challenge in the sense of a claimed lack of power to adjudicate or to act in the premises. Were we to accept *amici*'s argument, the exhaustion requirement would be of little import since virtually every challenge to an agency's action can be clothed in the rhetoric of a "lack of authority."

We perceive no reason peculiar to this appeal to depart from the general rule that all issues which a party contests on appeal must be raised at the appropriate time un-

men's compensation insurance . . .; provided such benefits are granted under approved plans and are distributed equitably to grant programs and to other activities.
41 C.F.R. § 1–15.711–10(a) states:

Compensation for employees engaged in federally assisted activities will be considered reasonable to the extent that it is consistent with that paid for similar work in other activities of the State [or] local . . . government.

der agency practice.[3] *Federal Communications Commission v. Schreiber,* 381 U.S. 279, 296–97, 85 S.Ct. 1459, 1470–71, 14 L.Ed.2d 383 (1965); 5 U.S.C. § 704. *Pierce County v. United States,* 699 F.2d 1001, 1005 (9th Cir.1983). The rule serves many beneficial purposes which are fully applicable here. In particular, it allows the issues involved in litigation to be narrowed and a proper record to be developed so the issues actually raised are well framed for review. While *amici* pose the issue here as a clear cut question of law, we cannot be certain that it would have come to us in that stark fashion had it been raised below. It is true that the Secretary's order as written directs recoupment out of non-CETA funds, thus raising the spectre of local governments having to appropriate millions of dollars out of general revenue to redress the misspending of CETA funds years before. However, had the issue been litigated before the Secretary, a somewhat different question might have emerged.

Franklin County did not pay the CETA funds in question to a third party from whom they could not be reacquired; rather, it put them in a self-insurance fund which, so far as we can tell, is, or was at the time of the administrative proceedings, subject to its control, a fact which may explain its rather indifferent attitude to this litigation. To the extent that Franklin County continued to control these funds, they might have been viewed as never expended and the action here one for disgorgement rather than recoupment. It seems to us at least arguable that, so far as the Secretary's re-medial powers are concerned, a case in which a local governmental body merely banks CETA money under a bookkeeping label is distinguishable from one in which the money is paid to a third party. What the actual facts are or how they might affect the outcome we do not pause to consider. We point it out merely as an illustration of the danger in deciding issues raised for the first time before us on the basis of arguments offered by *amici* who care more about abstract issues than the facts of the instant matter.

## BURDEN OF PROOF AND SUBSTANTIALITY OF THE EVIDENCE

■ Petitioner's other contentions do not merit lengthy consideration. Franklin County asserts that the ALJ erred by placing the burden of proof upon the County rather than upon NYSDOL or the Secretary. However, when the ALJ stated at the hearing that Franklin County had the burden of proof, petitioner failed to object. Moreover, the County failed to raise the issue with the Secretary pursuant to 20 C.F.R. § 676.91(f). Hence, we find this objection also waived.

■ We reject Franklin County's claims that the ALJ's findings were not supported by substantial evidence. In the face of the County's failure to present any evidence of the reasonableness of—or even the reasons for [4]—its choice of a higher rate for CETA participants, it is clear that the ALJ could find persuasive the testimony of NYSDOL auditor Daniel Clark that the two tier system was inequitable because CETA workers

---

3. Under CETA regulations, 20 C.F.R. § 676.-88(f), a complainant must identify those provisions of the agency's determination upon which a hearing before an ALJ is requested, and, "[t]hose provisions of the determination not specified for hearing ... shall be considered resolved and not subject to further review." Neither Franklin County's request for a hearing nor its prehearing statement alluded to the Secretary's authority to order recoupment. Although it is possible under Department of Labor rules for the prehearing pleadings to be amended to conform to issues raised during the hearing, 20 C.F.R. § 676.90(d), Franklin County also failed to present the question of the Secretary's authority to the ALJ during the hearing. *See also,* 20 C.F.R. § 676.89(a) (incorporating the Federal Rules of Civil Procedure into agency practice; hence questions not raised below may be deemed waived). Moreover, it did not seek review by the Secretary of any aspect of the ALJ's recoupment order under 20 C.F.R. § 676.91(f).

4. An example of Franklin County's methodology in setting the amount of the CETA pay-in emerged in this colloquy between Stanley Rockhill, who formulated the Franklin County's CETA workers' compensation coverage, and ALJ Sobernheim:

    WITNESS: The [premium] rate was basically one percent, we charged for the staff; three percent we charged for the other participants; and we put a ceiling on it, based on

paid in roughly 25% of the premiums but received only about 12.5% of the awards from the SIP. Indeed, the undisputed disparity of premium rates clearly creates a disparity of compensation, amply supporting the findings of the ALJ that there was a violation of 41 C.F.R. §§ 1–15.711–13 and 1–15.711–10(a). We therefore find that the decision of the ALJ that the funds were spent in violation of CETA was supported by substantial evidence and, accordingly, we affirm.

OAKES, Circuit Judge (concurring):

While I fully appreciate that Judge Winter's opinion for the court does not reach the merits, and hence concur in it, I write out of an abundance of caution only to make it plain that the language to the effect that the Secretary's authority to order recoupment is not "jurisdictional in nature," not be misconstrued. The Government, which has cited to us *Orange County, New York v. United States Department of Labor,* 636 F.2d 889 (2d Cir.1980) (per curiam order), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981), as support for the agency's de facto authority to recoup when the availability of that remedy was never raised as an issue, should understand quite clearly that the jurisdictional language in Judge Winter's opinion is just that and in no way goes to the merits. I say this bearing in mind that if we were to reach the merits, I have every reason to believe that my own vote at least would be cast against any finding that the sanction of recoupment was a permissible one under the 1973 Comprehensive Employment and Training Act prior to the 1978 amendment in 29 U.S.C. § 816(d)(1) (Supp. V 1981). *See generally State of New Jersey v. Hufstedler,* 662 F.2d 208 (3d Cir.1981), *cert. granted sub nom. Bell v. New Jersey,* —— U.S. ——, 103 S.Ct. 48, 74 L.Ed.2d 55 (1982).

what we anticipated our funding would be for each year, so the ceiling varied from thirty-five, forty and fifty thousand dollars.

JUDGE SOBERNHEIM: How do you get at the ceiling when you have a one percent of the staff cost—payroll cost of staff? How was there a ceiling?

WITNESS: The ceiling was on the total premium we paid the county. We were concerned—

JUDGE SOBERNHEIM: How could there be a ceiling? What justifies putting a ceiling on a rate which is allegedly established to take care of calculated or estimated costs?

WITNESS: I guess our concern was that at the time the budget was done for the self-insurance plan, we never knew what our funding was going to be.

JUDGE SOBERNHEIM: How is your ceiling calculated? How do you arrive at that ceiling?

WITNESS: We look at the—

JUDGE SOBERNHEIM: Do you throw darts at the board?

WITNESS: Not quite. We tried to anticipate what the funding level would be. We had—

JUDGE SOBERNHEIM: No, you don't quite follow what I want to get at. You say that the staff was one percent and if the staff payroll was $500,000 then the staff premium then would be $5,000, and then you say you have workers and you say their payroll is $2,000,000 and you would pay three percent, and that would be $60,000, so you have $65,000 and now you say you have a ceiling also; where does that ceiling come from? How is it calculated? What is the way you determine it?

WITNESS: I guess the ceiling indicated our concern for—

JUDGE SOBERNHEIM: No, I don't care what it indicated. I care how you determined that ceiling should be $59,500 or that the ceiling was $70,000 or whatever figure you had.

WITNESS: We did it arbitrarily.

JUDGE SOBERNHEIM: All right.